UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| MANUEL RODRIGUEZ, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL COMMERCIAL SOLUTIONS, LLC., *et al*. <br><br> Defendants. | Case No. 1:17-cv-00112 <br> TSE-JFA |

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Manuel Rodriguez ("Mr. Rodriguez"), Juan Rodas ("Mr. Rodas"), Juan Flores Lopez ("Mr. Lopez"), Jose Rivera ("Mr. Rivera"), Pedro Orellana ("Mr. Pedro Orellana"), Jose Benitez ("Mr. Benitez"), Jaime Alarcon Aguilar (Mr. Alarcon"), William Orellana ("Mr. William Orellana"), Vladimir Condori ("Mr. Condori"), Kenny Barriantos ("Mr. Barriantos"), Indira Barriantos ("Ms. Barriantos"), Hugo Bermudez ("Mr. Bermudez"), Sandra Bonnilla ("Ms. Bonilla"), Cesar Duran ("Mr. Duran"), Hermes Marulanda ("Mr. Marulanda"), Ruth Monje ("Ms. Monje"), Marcos Flores ("Mr. Flores"), and Bernardo Martinez ("Mr. Martinez") (together, the "Plaintiffs") respectfully move this Court, pursuant to Fed. R. Civ. P. 55(b), to enter a default judgment against Defendants Capital Commercial Solutions, LLC ("CCS"), Ixel R. Morales, and Keren Torres (collectively "Defendants")[1] for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[2]

---

[1] Plaintiffs reached a settlement with CCE Specialties, LLC ("CCE"), and the Court approved the settlement on July 17, 2017. Dkt. 42.

[2] Plaintiff Carlos Molina elected not to join this Motion for Default Judgment.

1

Plaintiffs' requested relief is limited: They ask that the Court enter a judgment against the Defendants in the amount of $44,749.74, which represents the outstanding liquidated damages owed to Plaintiffs based on the Settlement Agreement with CCE. Plaintiffs do not seek an additional award of attorneys' fees.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Factual Background

Settling Defendant CCE is a construction company specializing in cold-form metal framing, engineered trusses, specialty drywall and acoustical ceiling for major residential and commercial construction projects. Am. Compl. ¶ 12. Defendant CCS was contracted by CCE to hire workers to perform construction duties on a brand-new luxury apartment building being erected at 1720 S. Eads Street, Arlington, VA 22202 (the "CCPO Project"). *Id.* ¶ 15. Defendant Ixel Morales is a member and manager of CCS, and his wife, Defendant Keren Torres, worked for CCS. *Id.* ¶¶ 8-9.

On the CCPO Project, Defendant CCS selected and hired each Plaintiff to work on the construction site. *Id.* ¶ 15. Defendant CCS, through Defendant Ixel Morales, agreed to pay Plaintiffs at an hourly rate, irrespective of the cost, success, or failure of the project. *Id.* ¶ 28. The rate of pay for each Plaintiff was determined by Defendant Ixel Morales upon hiring. *Id.*; *see also id.* ¶ 24. Defendant CCS, through Defendants Ixel Morales and Keren Torres, typically paid Plaintiffs in cash. *Id.* ¶ 29. On one occasion where Defendants agreed to pay Plaintiff Ms. Monje by check, Defendant Ixel Morales wrote a personal check that was not honored. Exhibit A, Copy of Check, MR_CCE_00000001. Without consent from Plaintiffs, Defendants Ixel Morales and Keren Torres withheld approximately two percent of each payment to cover the cost of "cashing the check." *Id.* ¶ 29. On the limited occasions where a Plaintiff requested to be paid by check to avoid this charge, Defendant Morales refused, sometimes while displaying a firearm on his desk.

2

*Id*.  Plaintiffs were not paid an overtime rate of one and one-half (1½) times their regular hourly rate for all hours worked over forty (40) in a given workweek.  *Id*. ¶ 43.  Defendants' failure to pay was not limited to overtime wages but also included failing to pay Plaintiffs at all for certain hours worked.  *Id.* ¶ 32.

On several occasions, Defendant Morales asked Plaintiffs to meet at his home or at TMT Auto Body and Restoration, LLC, another business owned by Mr. Morales, in order to receive payment.  *Id*.  Defendants routinely made Plaintiffs wait for hours to receive payment, after which Defendants would give various reasons for why they were unable to pay Plaintiffs for their work on the CCPO Project.  *Id*.  When Plaintiffs demanded payment, Defendant Morales subjected them to verbal abuse and harassment, *id.* ¶¶ 35-36, and on at least one occasion, threatened employees by brandishing a handgun, *id.* ¶ 38.

The Amended Complaint alleges that Defendants failed to pay regular and overtime wages from approximately February 2016 through August 2016 and details the unpaid wages applicable to each Plaintiff.  *Id.* ¶¶ 52-155.  The Amended Complaint alleges violations of the FLSA against all defendants for failing to pay minimum wages and overtime wages, a breach-of-contract claim against Defendant CCS, and a claim for conversion against CCS and Morales for unlawfully taking the two percent check-cashing fee from each payment.

    **B.**    **Procedural History**

On January 26, 2017, certain plaintiffs filed a complaint against Defendants and CCE, alleging violations of the FLSA and certain state-law claims.  ECF No. 1.  This complaint was not served on Defendants CCS, Morales, or Torres; CCE waived service.  On March 31, 2017, Plaintiffs filed the Amended Complaint alleging similar claims.  ECF No. 7.  Plaintiffs served the Amended Complaint on Defendants CCS, Morales, and Torres on April 5, 2017, and their answers to the Amended Complaint were due on April 26, 2017.  ECF No. 16.  On May 2, 2017, after

Defendants failed to respond to the Amended Complaint, the Clerk, at Plaintiffs' request, entered a Notice of Default against Defendants. ECF No. 21. To date, Defendants have failed to appear in the case or take any action to defend themselves in the matter.[3]

During May and June 2017, Plaintiffs and CCE engaged in discovery by exchanging documents and interrogatories. CCE produced certain records in its possession and also produced records it had received from Defendants that purport to reflect hours worked by Plaintiffs. Included in these productions was a handwritten document prepared by Defendant Morales that reflects certain unpaid hours for Plaintiffs and other workers. Concurrently, Plaintiffs and CCE entered into settlement negotiations, and on June 30, 2017, Plaintiffs and CCE filed a Joint Motion to Approve Settlement Agreement. ECF No. 36. Under the terms of the Settlement Agreement, CCE agreed to settle Plaintiffs' claims against it for $57,455.83, representing the agreed amount of unpaid regular and overtime wages, and $35,400 in attorneys' fees and costs. ECF No. 36-1 at 2-3. Following a hearing on July 14, 2017, the Court entered an Order on July 17 approving the Settlement Agreement. ECF No. 42. In that Order, the Court further ordered Plaintiffs to file any motion for default judgment against Defendants CCS, Morales, and Torres no later than July 28. *Id*. at 8.[4]

## II. LEGAL STANDARD

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum

---

[3] CCE filed cross-claims against its co-defendants, CCS, Morales, and Torres. ECF No. 6. The Clerk also entered a Notice of Default against Defendants as to the cross-claims, ECF No. 23, although CCE dismissed without prejudice the cross-claims as part of the settlement.

[4] Plaintiff Jhom Montano was not party to the Settlement Agreement. On June 30, 2017, Plaintiffs moved to withdraw as Mr. Montano's counsel, ECF No. 34, and on July 14, 2017, the Court granted this motion, ECF No. 40. Mr. Montano had 10 days from the date of that Order—until July 24—to inform the Court whether he intended to prosecute his claims; the Court made clear that failure to respond would result in dismissal of his claims for want of prosecution. *Id.*

certain or a sum that can be made certain by computation." Actual damages for unpaid regular and overtime wages under the FLSA are a sum certain for the purposes of Fed. R. Civ. P. 55(b)(1). *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 793–94 (D. Md. 2010) ("A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence."). The evidence put forth by Plaintiffs demonstrates that Defendants violated the FLSA by failing to pay regular and overtime wages, and that Plaintiffs are entitled to liquidated damages because Defendants did not act in good faith.

### III. ARGUMENT

#### A. Defendants Violated The FLSA By Failing To Pay Minimum And Overtime Wages

In considering whether a party is liable in a motion for default judgment, the defaulting party is deemed to have admitted all well-pleaded allegations in the complaint other than damages, and the Court need only determine whether those facts establish a claim for the relief sought. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The facts alleged in the Amended Complaint establish that Defendants violated the FLSA by failing to pay minimum and overtime wages.

In order to show that Defendants violated the FLSA's overtime provisions, Plaintiffs must show that they (1) were employed by Defendants; (2) were engaged in commerce, or in the production of goods for commerce; (3) were not exempt from overtime under 29 U.S.C. § 213; and (4) worked over 40 per workweek and were not compensated at a rate of 1.5 times their regular rates for each hour worked beyond 40. 29 U.S.C. § 207(a)(1). The elements for establishing a violation of the FLSA's minimum wage provision are similar, except that Plaintiffs must show

5

they were not paid at least the minimum wage for every hour worked (as opposed to showing they were not paid time-and-a-half). 29 U.S.C. § 206(a).

Those elements are satisfied here. First, the Amended Complaint alleges that Plaintiffs were engaged in commerce. It alleges that CCS had an annual gross income volume of business exceeding $500,000 and at least two employees who were engaged in interstate commerce, Am. Compl. ¶ 21, and that Plaintiffs were engaged in commerce by working on a construction project with Defendants, *id.* ¶¶ 7, 10. Second, the Amended Complaint alleges that the Plaintiffs were non-exempt employees under the FLSA, *id.* ¶ 11; *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (employer bears burden of proving an employee's job is exempt). Third, the Amended Complaint includes detailed allegations that the Plaintiffs did not receive minimum or overtime wages. For each Plaintiff, the Amended Complaint alleges the agreed upon hourly wage, the total hours worked by that Plaintiff, the total number of unpaid hours, and the total number of unpaid overtime hours. Am. Compl. ¶¶ 52-155.

Finally, the Amended Complaint alleges sufficient facts to establish that Ixel Morales and Keren Torres are personally liable for the FLSA violations because they were Plaintiffs' "employers" under the statute. Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The Amended Complaint alleges that Defendant Morales determined each Plaintiff's rate of pay, Am. Compl. ¶ 28, and Plaintiffs routinely met him at his auto body shop or his home to receive their pay, *id.* ¶ 30. The evidence also shows that, on at least one occasion, Defendant Morales attempted to pay an employee with a personal check. *See* Exhibit A, Copy of Check from Ixel Morales to Ruth Monje, MR_CCE_00000001. With respect to Defendant Torres, she

calculated the pay owed to each employee, regularly distributed payment to the employees, and recorded those payments.  Am. Compl. ¶ 31.

Accordingly, the detailed allegations in the Amended Complaint establish that Plaintiffs are entitled to damages under the FLSA.

> **B.      The Court Should Enter A Judgment Against Defendants For Outstanding Liquidated Damages In The Amount Of $44,749.74**

> > 1.      Plaintiffs Are Entitled to Liquidated Damages

The FLSA allows covered employees to sue for "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The "FLSA plainly envisions that liquidated damages . . . are the norm" for violations of the act.  *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997); *see also Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (under the FLSA, "[d]ouble damages are the norm, single damages the exception").  A court may exercise its discretion to deny liquidated damages only "where the employer shows . . . that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [the] FLSA."  *Id.* at 70-71 (alterations and quotation marks omitted).  Courts have characterized this as a "high standard" and found that "knowledge [of the FLSA] will be imputed to the offending employer."  *Williams v. Maryland Office Relocators, LLC*, 485 F. Supp. 2d 616, 620 (D. Md. 2007) (quotation marks omitted) (superseded by statute on other grounds).  "Courts have consistently held that ignorance of the FLSA's requirements is not a defense to liquidated damages."  *Rogers v. Savings First Mortgage, LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005).

The evidence is clear that Defendants did not act in good faith.  There is no evidence that Defendants ever paid any overtime wages to Plaintiffs; nor is there any evidence that Defendants

7

made any effort at all to comply with the FLSA.  *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("To establish . . . 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them.") (quotation marks omitted).  In fact, the available evidence demonstrates that Defendants acted in bad faith.  As alleged in the Amended Complaint, Defendant Morales regularly subjected Plaintiffs who sought payment to verbal abuse and harassment, Am. Compl. ¶¶ 34-36, including threatening employees who complained about non-payment by brandishing a handgun in response to those complaints, *id.* ¶ 38.  Defendant Morales also discouraged Plaintiffs from seeking legal recourse to remedy his misconduct by bragging that he was "judgment proof" because his assets were held in Defendant Keren Torres's name.  *Id.* ¶ 37.  Because Defendants cannot show they acted in good faith, Plaintiffs are entitled to liquidated damages.

### 2.   Outstanding Liquidated Damages Are $44,749.74

Plaintiffs' settlement with CCE was calculated using each Plaintiff's agreed-upon contract wage, which in all cases was between $16 and $20 per hour.  *See* Plaintiffs' Interrogatories, Attached as Exhibits B-S (outlining the contract wage for each Plaintiff).  That settlement did not, and was not intended to, encompass liquidated damages.  Rather than attempting to recover any outstanding contract wages, Plaintiffs seek a default judgment in the amount of $44,749.74, the sum of outstanding liquidated damages owed to each Plaintiff.  Exhibit T to this Motion provides the underlying calculations, but in short, Plaintiffs calculated the FLSA damages using the unpaid hours and overtime hours as identified in the attached interrogatories, and the wages mandated by the FLSA—$7.25 for all unpaid regular hours and 1.5 times the contract rate for all unpaid overtime hours.  *See Lizarzu v. Vallejos*, Civil Action No. 1:08-cv-858, 2009 WL 3055443, at *8 (E.D. Va. Sept. 22, 2009) (Ellis, J.) (using minimum wage to calculate unpaid regular wages and one-and-a-half times the contract rate to calculate unpaid overtime wages).  The wage damages

US-DOCS\88486733.15

for each Plaintiff was doubled to account for liquidated damages.  Adding the check cashing fee applicable to each Plaintiff then yielded a total damages figure for that Plaintiff.  To ensure that no Plaintiff receives double recovery, Plaintiffs subtracted the Settlement Amount for each Plaintiff—which accounts for the check cashing fee, wage damages, and a small portion of liquidated damages—from the total damages figure applicable to that Plaintiffs, the difference of which is the total outstanding liquidated damages for that Plaintiff.  In sum, total outstanding liquidated damages are $44,749.74, divided among the Plaintiffs as identified in the following chart:

| Plaintiff | Default Judgment Amount |
|---|---|
| Jamie Alarcon Aguilar | $ 1,642.56 |
| Indira Barriantos | $ 3,907.97 |
| Kenny Barriantos | $ 733.62 |
| Jose Benitez | $ 1,505.62 |
| Hugo Bermudez | $ 703.39 |
| Sandra Bonilla | $ 2,837.51 |
| Vladimir Condori | $ 3,973.49 |
| Cesar Flores Duran | $ 3,724.42 |
| Marcos Flores | $ 717.44 |
| Juan Flores Lopez | $ 2,301.85 |
| Bernardo Martinez | $ 716.14 |
| Hermes Marulanda | $ 2,666.60 |
| Ruth Monje | $ 4,241.17 |
| Pedro Orellana | $ 1,934.11 |
| William Orellana | $ 2,098.39 |
| Jose Rivera | $ 1,993.92 |
| Juan Rodas | $ 5,114.99 |
| Manuel Rodriguez | $ 3,936.55 |
| *Total* | **$ 44,749.74** |

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant Plaintiffs' Motion for Default Judgment and enter a judgment against Defendants in the amount of $44,749.74.

Respectfully submitted,

/s/ Simon Sandoval-Moshenberg                                        Dated: July 28, 2017
Simon Sandoval-Moshenberg (VSB No. 77110)
Simon@justice4all.org
Nady Peralta (VSB No. 91630)
Nady@justice4all.org
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, Virginia 22041
Phone: (703) 720-5605
Fax: (703) 778-3454

Christine T. Dinan (VSB No. 84556)
Christine_dinan@washlaw.org
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 DuPont Cir., NW Suite 400
Washington, D.C. 20036
Phone: (202) 319-1000
Fax: (202) 319-1010

Kevin H. Metz (VSB No. 89861)
Kevin.metz@lw.com
Brian A. Lichter (*pro hac vice*)
Brian.lichter@lw.com
Norman Anderson (*pro hac vice*)
Norman.anderson@lw.com
Latham & Watkins LLP
555 Eleventh St., NW Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on July 28, 2017, I served the following unpresented defendants, by U.S. Mail, at their last known address, as follows:

> Capital Commercial Solutions, LLC
> Ixel R. Morales
> Keren Torres
> 6300 Lincolnia Road
> Alexandria, VA 22312

By: ____//s//_____
Simon Sandoval-Moshenberg (VSB No. 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, Virginia 220401
(703) 720-5605 –Telephone / (703) 778-3454 -Fax
simon@justice4all.org