IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MANUEL RODRIGUEZ, *et al.*, )
                         )
        Plaintiffs, )
                         )
v. )     Civil Action No. 1:17cv0112 (TSE/JFA)
                         )
CAPITAL COMMERCIAL SOLUTIONS, )
LLC, *et al.*, )
                         )
        Defendants. )
                         )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiffs

Manuel Rodriguez, Juan Rodas, Juan Flores Lopez, Jose Rivera, Pedro Orellana, Jose Benitez,

Jaime Alarcon, William Orellana, Vladimir Condori, Kenny Barriantos, Indira Barriantos, Hugo

Bermudez, Sandra Bonilla, Cesar Duran, Hermes Marulanda, Ruth Monje, Marcos Flores, and

Bernardo Martinez (collectively "plaintiffs")[1] against defendants Capital Commercial Solutions,

LLC ("CCS"), Ixel R. Morales ("Morales"), and Keren Torres ("Torres") (collectively

"defendants"). (Docket no. 43). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned

magistrate judge is filing with the court his proposed findings of fact and recommendations, a

copy of which will be provided to all interested parties.

---

[1] Plaintiffs Carlos Molina and Jhom Montano did not join this motion for default judgment. Plaintiffs' counsel has represented that plaintiff Carlos Molina has elected not to join this motion. (Docket no. 43 at 1 n.2). Regarding Mr. Montano, on July 14, 2017, the court granted plaintiffs' counsel's motion to withdraw as counsel for Mr. Montano and directed Mr. Montano to inform the court within ten days whether he intended to prosecute his claims. (Docket no. 43). There is no evidence in the record that Mr. Montano has responded to the court's order.

## Procedural Background

On January 26, 2017, certain plaintiffs filed a complaint against defendants and CCE Specialists, LLC ("CCE"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and certain state law claims. (Docket no. 1). CCE waived service of this complaint (Docket nos. 3, 4) and filed its answer asserting crossclaims against CCS, Morales, and Torres on March 30, 2017 (Docket no. 6). Service of the first complaint was not completed on CCS, Morales, or Torres. On March 30, 2017, the District Judge entered a Scheduling Order directing plaintiffs to serve all defendants that had not been served before April 12, 2017. (Docket no. 10). The Scheduling Order also directed cross-claimant to serve all cross-defendants by April 12, 2017, and further ordered all parties required to file a responsive pleading to do so within ten days of being served. (*Id.*).

Plaintiffs, along with Carlos Molina and Jhom Montano, filed the amended complaint, on behalf of themselves and all others similarly situated, on March 31, 2017 against defendants and CCE alleging violations of the FLSA and various Virginia state laws. (Docket no. 7) ("Am. Compl."). Specifically, the amended complaint alleges that defendants failed to pay plaintiffs minimum and overtime wages as required by the FLSA. (Am. Compl. ¶ 2). Plaintiffs also assert claims for breach of contract against CCS (Am. Compl. ¶¶ 165–69), and a claim of conversion against CCS and Morales (Am. Compl. ¶¶ 170–71). CCE filed an answer to the amended complaint on April 5, 2017. (Docket no. 15). During May and June 2017, plaintiffs and CCE engaged in discovery, and filed a joint motion to approve their settlement agreement on June 30, 2017 (Docket no. 36), which the court adopted on July 17, 2017 (Docket no. 42).[2] Pursuant to the settlement agreement, CCE agreed to settle plaintiffs' claims against it for $57,455.83 in

---

[2] The settlement agreement also includes Carlos Molina. (Docket no. 36).

compensatory damages, plus $35,400 for attorney's fees and costs. (*Id.*).[3] Accordingly, plaintiffs do not bring this motion for default judgment against CCE.

On April 4, 2017, summonses were issued for service on CCS, Morales, and Torres. (Docket no. 12). On April 10, 2017, a return of service indicating that Torres, Morales, and CCS had been served was filed. (Docket no. 16). This return indicated on April 5, 2017 at 5750 General Washington Drive, Alexandria, Virginia 22312, Torres and Morales were served personally, and that CCS was served through personal service on Morales, its registered agent. (*Id.*). Pursuant to the Scheduling Order (Docket no. 10), CCS, Torres, and Morales were to file responsive pleadings by April 17, 2017, ten days after service of process. CCS, Torres, and Morales have failed to file a responsive pleading, and the time for doing so has expired.

On May 1 2017, plaintiffs requested entry of default against defendants (Docket no. 20), which the Clerk of Court entered on May 2, 2017 (Docket no. 21). In the Order granting plaintiffs' and CCE's proposed settlement agreement, the District Judge directed plaintiffs to file a motion for default judgment and memorandum in support by July 28, 2017. (Docket no. 42 at 8). On July 28, 2017, plaintiffs filed the motion for default judgment and incorporated memorandum in support (Docket no. 43), and notice setting the hearing on the motion before the undersigned on Friday, August 11, 2017 (Docket no. 44). Plaintiffs have also filed certificates of service indicating that defendants were served with copies of the motion for default judgment and notice of hearing by U.S. mail at their last known address, 6300 Lincolnia Road in Alexandria, Virginia. (Docket nos. 43 at 11; 44 at 3).

On August 11, 2017, counsel for the plaintiffs appeared at the hearing before the undersigned, and no one appeared on behalf of the defendants.

---

[3] Under the terms of the settlement agreement, CCE also agreed to dismiss its cross-claims against CCS, Morales, and Torres.

3

## Factual Background

The following facts are established by the amended complaint. (Docket no. 7). Plaintiffs are adult residents of Virginia and Maryland. (Am. Compl. ¶ 6). Defendant CCS is a Virginia limited liability company with its registered office at 6300 Lincolnia Road in Alexandria, Virginia.[4] (Am. Compl. ¶ 7). At all times relevant to this action, CCS was an enterprise within the meaning of the FLSA; had an annual gross income volume of business of over $500,000; and had employees who were engaged in commerce or handle, sell, or otherwise work on goods or materials that have moved in or were produced in commerce. (Am. Compl. ¶¶ 21, 156). Defendants Morales and Torres are both adult residents of Fairfax County, Virginia. (Am. Compl. ¶¶ 8, 9). Morales is a member and manager of CCS, and he approved plaintiffs as employees, arranged their work, determined their rate of pay, and paid them for their work. (Am. Compl. ¶¶ 8, 24). Torres is Morales' wife and an employee of CCS. (Am. Compl. ¶ 9). As an employee of CCS, Torres distributed payments to plaintiffs and kept records of the payments made. (*Id.*). At all times relevant, defendants were plaintiffs' employers for the purposes of the FLSA. (Am. Compl. ¶ 156).

CCE is a construction company that worked on the development of a luxury apartment building located at 1720 S. Eads Street in Arlington, Virginia ("the Project"). (Am. Compl. ¶¶ 12, 15). Plaintiffs allege that CCE hired CCS to act as a staffing agency and provide construction workers for the Project. (Am. Compl. ¶ 15). Pursuant to this agreement, CCS selected and hired all of the plaintiffs to work at the Project's construction site. (*Id.*). CCS, through Morales, agreed to pay plaintiffs at an hourly rate, irrespective of the cost, success, or

---

[4] Plaintiffs' amended complaint identifies CCS as a Virginia corporation. (Am. Compl. ¶ 7). However, a review of the Virginia Secretary of the Commonwealth business entity search reveals it is a limited liability company. At the hearing on the motion for default judgment, plaintiffs' counsel confirmed that CCS is a limited liability company, not a corporation.

4

failure of the project. (Am. Compl. ¶ 28). Morales determined the rate of pay for each plaintiff at the time that individual was hired. (*Id.*). Under CCE's proposed work schedule, plaintiffs were required to work from 7:00 a.m. to 5:00 p.m. Monday through Thursday, and from 7:00 a.m. to 3:00 p.m. on Fridays and Saturdays. (Am. Compl. ¶ 26). Despite working approximately fifty-eight hours each week, plaintiffs allege that they were never paid the FLSA overtime rate of one and one half times their regular rate of pay. (*Id.*). Plaintiffs further allege that there were also occasions in which they were not paid for their regular hours worked. (Am. Compl. ¶ 32). Plaintiffs' amended complaint details the unpaid wages applicable to each plaintiff, and claims that these failures to fully compensate plaintiffs occurred from February 2016 through August 2016. (Am. Compl. at 13–28). Plaintiffs allege that defendants willfully violated the FLSA in failing to provide them full compensation for the work they performed. (Am. Compl. ¶ 44).

CCS, through Morales and Torres, typically paid plaintiffs in cash. (Am. Compl. ¶ 29). Without plaintiffs' consent, Morales and Torres withheld 2% of each payment to cover the cost of "cashing the check." (*Id.*). When plaintiffs requested to be paid by check to avoid this charge, Morales refused, sometimes while displaying a firearm. (*Id.*). Plaintiffs also allege that they had to go to either Morales' home or auto body shop, both located in Alexandria, to receive their payments. (Am. Compl. ¶ 30). Torres regularly distributed payment to plaintiffs and recorded the payments she disbursed. (Am. Compl. ¶ 31). Plaintiffs believe that Torres is the only individual with records of payments made by CCS to its employees and was the sole individual responsible for calculating the pay to be distributed to each employee. (*Id.*). Plaintiffs also allege that they were often forced to wait hours to receive payment, after which defendants would give various reasons explaining why they could not be paid at that time. (Am. Compl. ¶

34). When plaintiffs complained or demanded full payment, Morales subjected them to verbal abuse and harassment, occasionally brandishing his handgun. (Am. Compl. ¶¶ 35–36, 38).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on defendants' failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default as to all defendants. (Docket no. 21).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. § 1337(a) provides that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The

6

FLSA itself also states that any action to recover unpaid minimum or overtime wages may be maintained "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). Since this action arises from a law of the United States, the FLSA, and further arises from an Act of Congress regulating commerce, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.

This court also has personal jurisdiction over the defendants. As stated in the amended complaint, defendant CCS is a Virginia company with its principal place of business in Alexandria, Virginia. (Am. Compl. ¶ 7). Defendants Morales and Torres are adult residents of Fairfax County, Virginia. (Am. Compl. ¶¶ 8–9). Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district. (Am. Compl. ¶¶ 15, 30).

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over the defendants, and that venue is proper in this court.

## Service

Pursuant to Fed. R. Civ. P. 4(e)(2), an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally. When serving a corporation or unincorporated association, Rule 4(h) authorizes service by delivering a copy of the summons and complaint to a general agent or any other agent authorized by appointment or law to receive service of process.

On April 4, 2017, summonses were issued for service on Ixel Morales, individually and as registered agent for Capital Commercial Solutions, LLC, and on Keren Torres at 6300 Lincolnia Road, Alexandria, Virginia 22312. (Docket no. 12). A review of the Virginia

7

Secretary of the Commonwealth Business Entity search reveals that Ixel Morales is the registered agent of Capital Commercial Solutions, LLC. Commonwealth of Virginia, SCC eFile, https://sccefile.scc.virginia.gov/Business/S428647 (last accessed Aug. 8, 2017). The return of service filed April 10, 2017 indicates that a private process server personally served both Morales and Torres on April 5, 2017 at 5750 General Washington Drive, Alexandria, Virginia 22312 with "the Summons in a Civil Action, Notice of Availability of A United States Magistrate Judge to Exercise Jurisdiction, Order, Complaint, Notice, Notice Initial and Final Pretrial Filings, and Collective Action Amended Complaint." (Docket no. 16). Accordingly, the undersigned recommends a finding that CCS, Morales, and Torres were properly served with the summons, amended complaint, and Order requiring that a response be filed within ten days of service.

Based on the foregoing, the undersigned recommends a finding that defendants were served properly with the summons and amended complaint.

### Grounds for Entry of Default

Pursuant to the Scheduling Order, defendants' responsive pleadings were due April 17, 2017, ten days after service of process. No responsive pleadings have been filed and the time for doing so has expired.[5] On May 1, 2017, plaintiffs filed a request for entry of default against defendants (Docket no. 20), which the Clerk of Court entered on May 2, 2017 (Docket no. 21). In accordance with the District Judge's Order on July 17, 2017 (Docket no. 42), plaintiffs filed the motion for default judgment and incorporated memorandum in support, and notice of hearing on July 28, 2017 (Docket nos. 43, 44). Plaintiffs also included certificates of service indicating that defendants were served with copies of the motion for default judgment and notice of hearing

---

[5] Not only has the ten-day period set in the Scheduling Order expired, the customary twenty-one day period to file a response has expired as well.

by U.S. mail at their last known address, 6300 Lincolnia Road in Alexandria, Virginia. (Docket nos. 43 at 11; 44 at 3).

Accordingly, the undersigned recommends a finding that the Clerk of Court has properly entered default as to the defendants.

## Liability and Measure of Damages

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendants failed to file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

As alleged in the amended complaint, defendants willfully violated certain provisions of the FLSA. (Am. Compl. ¶ 44). Defendants were required by the FLSA to compensate each employee based on the federal minimum wage for each hour worked. *See* 29 U.S.C. § 206(a). Additionally, for each hour worked in access of forty hours per week, the FLSA guarantees an employee overtime pay at a rate of not less than one and one-half (1.5) times the employee's regular rate of pay. 29 U.S.C. § 207(a). As set forth in the incorporated memorandum in support of plaintiffs' motion for default judgment, plaintiffs seek only an award of outstanding liquidated damages in the amount of $44,749.74. (Docket no. 43 at 8).

Plaintiffs explain that they do not have access to their employment records, so the compensation they seek is based on their recollection of the hours they worked and the pay they received. (Docket no. 43, Exs. B–S). Courts have found that an employee's affidavit about the recollection of hours worked and the pay received may be a basis for the court to award damages, if deemed credible by the court. *See, e.g., Lopez v. Lawns 'R' Us*, Civ. No. DKC 07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008). Additionally, "[t]he Court may award

damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Id.* In support of their requests for unpaid wages, plaintiffs have submitted their responses to CCE's interrogatories, in which they each detail, based on their recollections, the hours they worked and pay they received. (Docket no. 43, Exs. B–S). Plaintiffs have also submitted spreadsheets of the wages they allege they are owed, which were used in reaching the settlement agreement with CCE. (Docket no. 43, Ex. T). The award of $44,749.74, which plaintiffs seek in this motion, is based upon the settlement agreement reached between plaintiffs and CCE. As recognized by the District Judge, plaintiffs' claimed damages "rely chiefly on plaintiffs' recollections and counsels' extrapolations" and the settlement agreement reached was a result of negotiation and compromise between these parties. (Docket no. 42 at 8). Based on the compromise that was involved in the settlement agreement and the standard that plaintiffs' recollections regarding their unpaid work may be used in determining damages, the undersigned will analyze plaintiffs' claimed damages in accordance with the information provided in their interrogatory responses, detailed below.[6]

**Counts 1 and 2: Violations of the Minimum Wage and Overtime Provisions of the FLSA**

To establish a violation of the FLSA for non-payment of the minimum wage under 29 U.S.C. § 206, a plaintiff must show that: (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. *See* 29 U.S.C. § 206.

---

[6] The amended complaint also states a claim for breach of contract and conversion. (Am. Compl. at 30). However, because plaintiffs bring this motion seeking default judgment only on their FLSA claims, these state law claims are not addressed in this proposed findings of fact and recommendation.

To establish a violation of the FLSA for non-payment of overtime hours, a plaintiff must show that: (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff worked over forty hours per work week; (4) the plaintiff was not compensated at a rate of 1.5 times her regular rate for each hour worked in excess of forty hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. *See* 29 U.S.C. § 207.

The facts set forth in the amended complaint establish that the plaintiffs were hired by CCS to work on the CCE construction project, and that the plaintiffs all worked on this project at varying times between February 1, 2016 and September 1, 2016. (Am. Compl. ¶ 11). During all relevant times, Morales was a member and manager of CCS and was in charge of approving plaintiffs as employees, arranging their work, determining the appropriate rate of pay for each individual plaintiff, and paying the plaintiffs. (Am. Compl. ¶ 8). Morales also allegedly threatened plaintiffs when they complained about defendants' failure to pay them for all hours worked. (Am. Compl. ¶¶ 35–36, 38). At all relevant times, Torres was also an employee of CCS and was responsible for distributing payments to the plaintiffs. (Am. Compl. ¶ 9). Torres kept records of all payments made, and plaintiffs believe she is the only individual with CCS's employment payment records, so is the individual responsible for calculating the pay distributed to each employee. (Am. Compl. ¶ 31). Accordingly, at all times relevant to this action, defendants were plaintiffs' employers for the purposes of the FLSA. (Am. Compl. ¶ 156).

Plaintiffs were also employees engaged in commerce under 29 U.S.C. §§ 206 and 207. (Am. Compl. ¶¶ 14, 15, 23). As employees, plaintiffs allege that defendants failed to compensate them for all hours worked (Am. Compl. ¶¶ 157–59), and that they routinely worked over forty hours per week. (Am. Compl. ¶ 26). Finally, no evidence has been produced to show

11

that any of the exceptions listed in 29 U.S.C. § 213 apply to plaintiffs and they appear to be covered employees entitled to the protections of the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception.").

**Jaime Alarcon Aguilar**

Jaime Alarcon Aguilar ("Mr. Alarcon") worked for defendants from May 16 to July 3, 2016, and was hired to work at a rate of $18 per hour. (Am. Compl. ¶ 52–53; Docket no. 43, Ex. G). Mr. Alarcon estimates that from May 16 through June 27, 2016, he was paid approximately $1,008 on a weekly basis, for fifty-six hours of work. (Am. Compl. ¶ 54). Mr. Alarcon alleges that for his sixteen hours of overtime work for these six weeks, he should have been paid at a rate of $27 ($18 x 1.5) per hour to compensate for the FLSA overtime provision, but was instead only paid at his regular hourly rate. (*Id.*). The difference in payment of Mr. Alarcon's regular hourly rate and overtime payment is $9 per hour, so he correctly claims to have been underpaid by $144 ($9 x 16) for each of these six weeks. (*Id.*) Accordingly, the total amount of overtime payment due to Mr. Alarcon from May 16 through June 27, 2016 is **$864** ($144 x 6).

From June 27 through July 2, 2016, Mr. Alarcon claims to have worked a total of fifty-six hours for which he received no payment. (Am. Compl. ¶ 55). In the amended complaint and Mr. Alarcon's interrogatory responses, he claims he is owed his contracted rate of $18 per hour for the forty hours of regular work and $27 per hour for the sixteen hours of overtime, totaling $1,152, for this period. (Docket no. 43, Ex. G). However, federal law provides a minimum wage of $7.25 per hour *see* 29 U.S.C. § 206(a)(1)(C), which plaintiffs concede in their motion for default judgment (Docket nos. 43 at 8; 43, Ex. T). Thus, for each regular business hour worked, Mr. Alarcon is entitled to payment at the rate of $7.25 per hour, totaling $290 ($7.25 x

40). The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's regular rate of pay for every hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a). Mr. Alarcon characterizes his regular rate to be the $18 hourly wage upon which he and defendants agreed. So, for these sixteen hours of overtime worked, Mr. Alarcon seeks an award of $432 ($18(1.5) x 16). However, the regular hourly rate "is determined by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.[7] Because Mr. Alarcon received no compensation for this week, his regular rate of pay would be zero. As such, Mr. Alarcon is only entitled to the federal minimum wages and overtime provisions for the time period of June 27 through July 2, 2016. Accordingly, Mr. Alarcon is entitled to $290 in regular wages, and $174 in overtime compensation ($7.25(1.5) x 16). Thus, Mr. Alarcon is due **$464** in minimum wage and overtime compensation for June 27 through July 2, 2016.

Based on the foregoing, the total unpaid and minimum wages due to Mr. Alarcon is **$1,328** ($864 + $464).

**Indira Barriantos**

Indira Barriantos ("Ms. Barriantos") claims that she was hired to work for defendants at rate of $17 per hour (Am. Compl. ¶ 58) and estimates that she worked for defendants from March 21 until July 21, 2016. (Docket no. 43, Ex. F ¶ 2). For twelve weeks between March 21 through June 11, 2016, Ms. Barriantos alleges she worked fifty-eight hours each week, but was

---

[7] Plaintiffs have cited this court's previous decision in *Lizarzu v. Vallejos*, No. 1:08-cv-858-TSE-JFA, 2009 WL 3055443 (Sept. 22, 2009), in support of their claim that the overtime wages should be calculated based on their contractual rates of pay. (Docket no. 43 at 8). Having reviewed this issue more closely since that report was prepared in 2009, the undersigned believes that the appropriate manner for the calculation of overtime in a week in which no payment was made is 1.5 times the minimum wage.

only compensated at her regular hourly rate instead of at the federally-mandated overtime rate. (Docket no. 43, Ex. F ¶ 4). Ms. Barriantos was thus underpaid by $153 for each of these weeks (18 weeks x ($25.5 - $17)). Accordingly, the total amount of overtime wages due to Ms. Barriantos from March 21, 2016 through June 11, 2016 is **$1,836** (12 weeks x $153 due in overtime compensation each week).

From June 13 through July 1, 2016, Ms. Barriantos claims that she worked a total of seventeen days without receiving pay. (*Id.*). During this time, she claims that she worked a total of 166 hours, comprised of 120 hours of regular business hours and 46 overtime hours. (*Id.*).[8] During this time, Ms. Barriantos incorrectly contends that she is owed a total amount of $3,213 ((120 regular hours x $17) + (46 overtime hours x $25.50)). (*Id.*). Federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Ms. Barriantos is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Ms. Barriantos received no wages from defendants (Docket no. 43, Ex. F ¶ 4), so her regular rate of pay for this week is zero. *See* 29 C.F.R. § 778.109. As such, Ms. Barriantos is only entitled to the federal minimum wage and overtime provisions for the time period of June 13 through July 1, 2016. Accordingly, Ms. Barriantos is entitled to $870 in regular wages ($7.25 x 120 hours) and $500.25 in overtime compensation (($7.25 x 1.5) x 46 hours), totaling **$1,370.25**.

---

[8] In Ms. Barriantos' interrogatory responses, she claims that she worked a total of 156 hours without receiving pay, comprised of 120 hours of regular work and 46 overtime hours. (Docket no. 43, Ex. F ¶ 4). Based on Ms. Barriantos' representation, it appears that she worked for a total of 166 hours without receiving pay, not 156 hours.

Accordingly, the total unpaid minimum and overtime wages due to Ms. Barriantos are **$3,206.25** ($1,836 + $1,370.25).

**Kenny Barriantos**

Kenny Barriantos ("Mr. Barriantos") claims that he worked for defendants from April 11, 2016 through July 22, 2016 (Docket no. 43, Ex. L ¶ 2) and was initially hired to work at a rate of $18 per hour (Am. Compl. ¶ 62). For eleven weeks between April 11 through June 20, 2016, Mr. Barriantos estimates that he worked a total of 529 hours, comprised of 439 hours of regular work and 90 hours of overtime work. (Docket no. 43, Ex. L ¶ 4). Despite working overtime hours in this period, Mr. Barriantos alleges that he was only compensated at his regularly hourly rate of $18 per hour instead of at the overtime rate of $27 per hour. (*Id.*). Mr. Barriantos correctly estimates that he was thus underpaid by $810 for this time ($9 x 90). Accordingly, the total amount of overtime wages due to Mr. Barriantos from April 11, 2016 through June 20, 2016 is **$810**.

From July 4 through July 22, 2016, Mr. Barriantos asserts that he worked a total of twelve days, or ninety-six regular hours, without receiving payment. (*Id.*). Calculated at his regular rate of pay, Mr. Barriantos believes he is owed $1,728 ($18 x 96). (*Id.*). However, Mr. Barriantos acknowledges that on July 9, 2016, he was paid $200 after demanding payment from Morales, so in his interrogatories he seeks payment of $1,528 for this period. (*Id.*). Federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Barriantos is entitled to a payment of $7.25 per hour, which is $696 ($7.25 x 96 hours). However, considering the $200 payment made by Morales, Mr. Barriantos is entitled to **$496** in regular wages.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Barriantos are **$1,306** ($810 + $496).

**Jose Benitez**

Jose Benitez ("Mr. Benitez") alleges that he worked for defendants between April 1, 2016 through August 9, 2016 (Docket no. 43, Ex. H ¶ 2) and was hired to work at a rate of $16 per hour (Docket no. 43, Ex. H ¶ 4; Am. Compl. ¶ 69). Between July and August 2016, Mr. Benitez believed he worked seventeen days without pay. (Docket no. 43, Ex. H ¶ 4; Am. Compl. ¶ 70). Based on his typical schedule of working fifty-six hours each week, Mr. Benitez estimates that he worked 120 hours of regular work and 40 hours of overtime during this time. Mr. Benitez incorrectly calculates his amount of unpaid minimum and overtime wages due to be $2,880. (*Id.*). Federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Benitez is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Mr. Benitez received no wages from defendants (Docket no. 43, Ex. H ¶ 4), so his regular rate of pay for this time period is zero. *See* 29 C.F.R. § 778.109. As such, Mr. Benitez is only entitled to the federal minimum wage and overtime provisions for the seventeen days between July and August 2016. Accordingly, Mr. Benitez is entitled to $870 in regular wages ($7.25 x 120 hours) and $435 in overtime compensation (($7.25 x 1.5) x 40 hours), totaling **$1,305**.

**Hugo Bermudez**

Hugo Bermudez ("Mr. Bermudez") was hired by defendants to work at an hourly rate of $17 per hour (Am. Compl. ¶ 73), and he alleges that he worked for defendants from April 11,

2016 through July 23, 2016 (Docket no. 43, Ex. E ¶ 3). During the week of May 9, 2016, Mr. Bermudez alleges he worked eight hours of overtime at which he was compensated at only his regular rate of pay. (Docket no. 43, Ex. E ¶ 4). Similarly, during the week of June 27, 2016, Mr. Bermudez claims that he worked four hours of overtime but was only compensated at his regularly hourly rate. (*Id.*). For the weeks of May 9 and June 27, 2016, Mr. Bermudez correctly concludes that is owed a total amount of unpaid overtime wages of **$102** (($25.5 - $17) x 12 hours).

Between July 4 and July 23, 2016, Mr. Bermudez claims that he worked a total of sixteen days without receiving payment. (*Id.*). During this time, he alleges to have worked a total of 132 hours, comprised of 120 hours of straight time work and 12 hours of overtime work. (*Id.*). Mr. Bermudez incorrectly calculates that he is owed a total amount of $2,346 ((120 regular hours x $17) + (12 overtime hours x $25.5)). However, federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Bermudez is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Mr. Bermudez received no wages from defendants (Docket no. 43, Ex. E ¶ 4), so his regular rate of pay for these weeks is zero. *See* 29 C.F.R. § 778.109. As such, Mr. Bermudez is only entitled to the federal minimum wage and overtime provisions for the time period of July 4 through July 23, 2016. Accordingly, Mr. Bermudez is entitled to $870 in regular wages ($7.25 x 120 hours) and $130.50 in overtime compensation (($7.25 x 1.5) x 12 hours), totaling **$1,000.50**.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Bermudez are **$1,102.50** ($102 + $1,000.50).

**Sandra Bonilla**

Sandra Bonilla ("Ms. Bonilla") was employed with defendants from approximately April 18 until July 29, 2016 and was hired to work at a rate of $18 per hour. (Docket no. 43, Ex. Q). For nine weeks between April 18 and June 17, 2016, Ms. Bonilla estimates that she worked 100 hours of overtime, but was only compensated at her base rate for these hours. (Docket no. 43, Ex. E. 4).[9] Accordingly, Ms. Bonilla was underpaid in the amount of **$900** (($27 - $18) x 100 hours) for overtime wages from April 18 through June 29, 2016.

From June 20 through July 8, 2016, Ms. Bonilla claims that she worked a total of fifteen days without pay, and that from July 18 through July 29, 2016, she worked for ten days without pay. (*Id.*). During this time, she alleges that she worked a total of 242 hours without compensation, comprising of 200 hours of straight time and 42 hours of overtime. (*Id.*). Ms. Bonilla acknowledges that she received a $200 payment from Morales during the week of July 4, 2016 and incorrectly calculates her unpaid wages due to be $4,734 ((200 regular hours x $18)) + (42 overtime hours x $27) - $200 payment received). Federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Ms. Bonilla is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Ms. Bonilla received no wages from defendants (Docket no. 43, Ex. Q ¶ 4), so her regular rate of pay for these weeks is zero. *See* 29 C.F.R. § 778.109. As such, Ms. Bonilla is only entitled to the federal minimum wage and overtime provisions for the time period of June 20 through July

---

[9] Exhibit T to Docket no. 43 indicates that Ms. Bonilla worked 104 overtime hours instead. However, the chart provided in Ms. Bonilla's interrogatory answers indicates this amount should be 100.

8, 2016. Accordingly, Ms. Bonilla is entitled to $1,450 in regular wages ($7.25 x 200 hours) and $456.75 in overtime compensation (($7.25 x 1.5) x 42 hours), less the $200 payment she received, totaling **$1,706.75**.

Accordingly, the total unpaid minimum and overtime wages due to Ms. Bonilla are **$2,606.75** ($900 + $1,706.75).

**Vladimir Condori**

Vladimir Condori ("Mr. Condori") was employed with defendants from approximately February 15 through August 15, 2016, and was hired to work at a rate of $19 per hour. (Docket no. 43, Ex. R). Mr. Condori alleges that he was paid a total amount of $20,216 for nineteen weeks of work. (Docket no. 43, Ex. R. ¶ 4). Based on his typical schedule of working fifty-six hours per week, Mr. Condori correctly calculates that during these nineteen weeks he should have been compensated in the amount of $23,140 ((40 hours/week x $19) + (16 hours overtime x $28.5) x 19 weeks). Mr. Condori is thus entitled to the difference between the amount he should have been compensated and the amount he was actually paid, which is **$2,888** ($23,140 - $20,216).

For two weeks of his employment, Mr. Condori alleges that he was not compensated at all. (*Id.*). During this time, Mr. Condori claims he worked a total of 90 hours, comprising of 80 hours in straight time and 10 hours in overtime. (*Id.*). Mr. Condori seeks an award of $1,805 (($19 x 80 hours) + ($28.5 x 10 hours)). However, as previously explained federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Condori is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a).

However, during this time, Mr. Condori received no wages from defendants (*id.*), so his regular rate of pay for these weeks is zero. *See* 29 C.F.R. § 778.109. As such, Mr. Condori is only entitled to the federal minimum wage and overtime provisions for these two weeks. Accordingly, Mr. Condori is entitled to $580 in regular wages ($7.25 x 80 hours) and $108.75 in overtime compensation (($7.25 x 1.5) x 10 hours), totaling **$688.75**.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Condori are **$3,576.75** ($2,888 + $688.75).

**Cesar Duran**

Cesar Flores Duran ("Mr. Duran") was employed with defendants from approximately March 14 through July 1, 2016, and was hired to work at a rate of $20 per hour. (Docket no. 43, Ex. C). For fifteen weeks between March 14 and June 25, 2016, Mr. Duran worked fifty-eight hours per week, but was only compensated for this work at his regular rate of pay. (Docket no. 43, Ex. C ¶ 4). Mr. Duran thus worked a total of 270 overtime hours (18 weekly overtime hours x 15 weeks) at which he was only compensated at his regular rate of pay. Accordingly, defendants owe Mr. Duran his unpaid overtime wages in the amount of **$2,700** (270 hours x ($30 - $20)) for the time period of March 14 through June 25, 2016.

From June 27 through July 1, 2016, Mr. Duran alleges that he worked five days without receiving compensation. (*Id.*). During this time, Mr. Duran claims he worked a total of 50 hours, comprised of 40 hours in straight time and 10 hours in overtime and seeks an award of $1,100 ((40 hours regular work x $20) + (10 hours overtime x $30)). However, as previously discussed, because Mr. Duran received no wages from defendants during this time, he is entitled to only the federal minimum wage of $7.25 per hour and overtime provisions for this time. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. Accordingly, Mr. Duran is entitled to $290 in

regular wages ($7.25 x 40) and $108.75 in overtime compensation (($7.25 x 1.5) x 10)), totaling **$398.75**.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Duran are **$3,098.75** ($2,700 + $398.75).

**Marcos Flores**

Marcos Flores ("Mr. Flores") was employed by defendants from approximately February 1 through August 7, 2016, and was hired to work at a rate of $18 per hour. (Docket no. 43, Ex. N). Mr. Flores estimates that he worked 120 hours without pay, comprising of all regular time work and claims he is owed $2,160 (120 hours x $18) for this work. (Docket no. 43, Ex. N ¶ 4). However, as previously explained, federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Flores is entitled to a payment of $7.25 per hour. Accordingly, Mr. Flores is entitled to **$870** in regular wages ($7.25 x 120 hours).[10]

**Juan Flores Lopez**

Juan Flores Lopez ("Mr. Flores Lopez") worked for defendants from March through August 9, 2016, and was hired to work at an $18 hourly rate. (Docket no. 43, Ex. J). From July 15 until August 9, 2016, Mr. Flores Lopez alleges that he worked without pay. (Docket no. 43, Ex. J ¶ 4). During this time, Mr. Flores Lopez estimates that he worked 196 hours of regular time and 64 hours of overtime and requests compensation in the amount of $5,256 ((196 regular hours x $18) + (64 hours overtime x $27)). (*Id.*). However, as previously discussed, because

---

[10] Exhibit T indicates that Mr. Flores was not paid for 10 hours of overtime work. (Docket no. 43, Ex. T at 2). The amended complaint also alleges that Mr. Flores estimated that he worked a total of three weeks unpaid, comprised of 120 straight time hours and 48 overtime hours. (Am. Compl. ¶ 96). This motion for default judgment seeks an award of "unpaid liquidated damages" to Mr. Flores in the amount of $717.44. (Docket no. 43 at 9). The above summary is based only on Mr. Flores' answers to the interrogatories. (Docket no. 43, Ex. N).

Mr. Flores Lopez received no wages from defendants for these four weeks, he is entitled to only the federal minimum wage of $7.25 per hour and the FLSA overtime provisions. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. Accordingly, Mr. Flores Lopez is entitled to $1,421 in regular wages ($7.25 x 196) and $696 in overtime compensation (($7.25 x 1.5) x 64), totaling **$2,117.**

**Bernardo Martinez**

Defendants hired Bernardo Martinez ("Mr. Martinez") in July 15, 2016 to work at a rate of $17 per hour, and he continued his employment with defendants until August 5, 2016. (Docket no. 43, Ex. B). Mr. Martinez estimates that he worked for fifteen days without pay. (Docket no. 43, Ex. B ¶ 4). Based on his typical schedule of working 40 hours per week, Mr. Martinez estimates that he worked a total of 120 hours of regular time without receiving payment, and claims that he is owed $2,040 for this period ($17 x 120 hours). (*Id.*). However, as previously explained, federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Mr. Martinez is entitled to a payment of $7.25 per hour. Accordingly, Mr. Martinez is entitled to **$870** in regular wages ($7.25 x 120 hours).[11]

**Hermes Marulanda**

Hermes Marulanda ("Mr. Marulanda") was hired to work for defendants at a rate of $18 per hour, and was employed by defendants from June 20, 2016 through August 20, 2016. (Docket no. 43, Ex. D). For seven weeks between June 20, 2016 through August 6, 2016, Mr.

---

[11] Exhibit T indicates that Mr. Martinez was not paid for 10 hours of overtime work. (Docket no. 43, Ex. T at 2). The amended complaint, however, does not allege that Mr. Martinez has not been compensated for overtime worked. (Am. Compl. ¶ 105). This motion for default judgment seeks an award of "unpaid liquidated damages" to Mr. Martinez in the amount of $714.14. (Docket no. 43 at 9). The above summary is based only on Mr. Martinez' answers to the interrogatories. (Docket no. 43, Ex. B).

Marulanda worked fifty-eight hours per week, but was only compensated for this work at his regular rate of pay. (Docket no. 43, Ex. D ¶ 4). Mr. Marulanda thus worked a total of 126 overtime hours (18 weekly overtime hours x 7 weeks) at which he was compensated only at his regular rate of pay. Accordingly, defendants owe Mr. Marulanda his unpaid overtime wages in the amount of **$1,134** (126 hours x ($27 - $18)) for the time period of June 20 to August 6, 2016.

From August 8 through August 20, 2016, Mr. Marulanda alleges that he worked for twelve days without pay. (*Id.*). During this time, Mr. Marulanda claims he worked a total of 116 hours, comprised of 80 in straight time and 36 in overtime and seeks an award of $2,412 ((80 hours regular time x $18) + (36 hours overtime x $25)). However, as previously discussed, because Mr. Marulanda received no wages from defendants during this time, he is entitled to only the federal minimum wage of $7.25 per hour and overtime provisions for this time. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. Accordingly, Mr. Marulanda is entitled to $580 in regular wages ($7.25 x 80) and $391.50 in overtime compensation (($7.25 x 1.5) x 36), totaling **$971.50**.

Based on the foregoing, the total unpaid minimum and overtime wages due to Mr. Marulanda are **$2,105.50** ($1,134 + $971.50).

**Ruth Monje**

Ruth Monje ("Ms. Monje") was employed with defendants from approximately February 29 through July 27, 2016 and was hired to work at a rate of $18 per hour. (Docket no. 43, Ex. P). For twenty weeks between February 29 and July 16, 2016,[12] Ms. Monje estimates that she worked approximately 320 hours of overtime, but was only compensated at her base rate for

---

[12] This twenty-week period excludes the week of May 2, 2016, for which Ms. Monje alleges she received no compensation.

these hours. (Docket no. 43, Ex. P ¶ 4). Accordingly, Ms. Monje was underpaid in the amount of **$2,880** (($27 - $18) x 320 hours) for overtime wages from February 29 through July 16, 2016.

For the weeks of May 2, July 18, and July 25, Ms. Monje alleges that she worked a total of fourteen days without pay. (*Id.*). During this time, she alleges that she worked a total of 132 hours without compensation, made up of 110 hours at her regular rate of pay and 22 hours of overtime work. (*Id.*). Ms. Monje incorrectly calculates her unpaid wages due to be $2,574 ((110 regular hours x $18) + (22 overtime hours x $27)). (*Id.*).

As previously described, federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Ms. Monje is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Ms. Monje received no wages from defendants (Docket no. 43, Ex. P ¶ 4), so her regular rate of pay for these weeks is zero. *See* 29 C.F.R. § 778.109. As such, Ms. Monje is only entitled to the federal minimum wage and overtime provisions for the weeks of May 2, July 18, and July 25. Accordingly, Ms. Monje is entitled to $797.50 in regular wages ($7.25 x 110 hours) and $239.25 in overtime compensation (($7.25 x 1.5) x 22 hours), totaling **$1,036.75**.

Therefore, the total unpaid minimum and overtime wages due to Ms. Monje are **$3,916.75** ($2,880 + $1,036.75).

### Pedro Orellana

Pedro Orellana was hired by defendants to work at a rate of $18 per hour, and worked for defendants from approximately May 1 through July 1, 2016. (Docket no. 43, Ex. O). Pedro Orellana estimates that he worked approximately 120 overtime hours over 44 days and was

compensated for this work only at his base rate. (Docket no. 43, Ex. O ¶ 4). Accordingly, Pedro Orellana was underpaid his overtime wages in the amount of **$1,080** (($27 - $18) x 120 hours).

Pedro Orellana further alleges that he worked for two weeks without receiving any compensation. (*Id.*). For these weeks, he estimates that he worked 56 hours during the first week, sixteen of which were overtime hours, and that he worked 30 hours during the second week. (*Id.*). Pedro Orellana claims that his unpaid wages for this time are $1,692 ((70 regular hours x $18) + (16 overtime hours x $27)). However, federal law provides a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Thus, for each regular business hour worked, Pedro Orellana is entitled to a payment of $7.25 per hour. The FLSA also requires employers to provide overtime compensation at one and one-half times the employee's normal rate of pay for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, during this time, Pedro Orellana received no wages from defendants (Docket no. 43, Ex. O ¶ 4), so his regular rate of pay for these weeks is zero. *See* 29 C.F.R. § 778.109. As such, Pedro Orellana is only entitled to the federal minimum wage and overtime provisions for these two weeks. These amounts are $507.50 in regular wages ($7.25 x 70 hours) and $174 in overtime compensation (($7.25 x 1.5) x 16), for a total amount of **$681.50.**

Therefore, the total unpaid minimum and overtime wages due to Pedro Orellana are **$1,761.50** ($1,080 + $681.50).

**William Orellana**

William Orellana worked for defendants from February 2016 through August 8, 2016, and was hired to work at an hourly rate of $18 per hour. (Docket no. 43, Ex. S). He alleges that during his employment, he worked for eight hours on ten Saturdays, which based on his typical work schedule, all qualified as overtime work. (Docket no. 43, Ex. S ¶ 4). Despite being

overtime work, he alleges that he was paid at his regular rate of pay. (*Id.*). As such, William Orellana was underpaid his overtime wages in the amount of **$720** (($27 - $18) x 80 hours).

William Orellana also alleges that during his employment, he estimates that he worked approximately 120 hours without pay, 32 of which represent overtime work. (*Id.*). Based on this estimation, William Orellana requests an award of unpaid wages in the amount of $2,448 ((88 hours regular work x $18) + (32 hours overtime x $27)). (*Id.*). However, as previously explained, because William Orellana received no wages from defendants for these hours worked, he is entitled to only the federal minimum wage of $7.25 per hour and the FLSA overtime provisions. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. These amounts are $638 in regular wages ($7.25 x 88 hours) and $348 in overtime compensation (($7.25 x 1.5) x 32 hours), for a total amount of **$986**.

Therefore, the total unpaid minimum and overtime wages due to William Orellana are **$1,706** ($720 + $986).

**Jose Rivera**

Jose Rivera ("Mr. Rivera") was hired to work for defendants at a rate of $16 per hour and was employed by defendants from approximately June 1 through August 1, 2016. (Docket no. 43, Ex. I). From June 1 to June 15, 2016, Mr. Rivera alleges that he worked fifty-six hours weekly, but was compensated for all hours worked at his regular rate of pay, rather than at the appropriate overtime compensation. (Docket no. 43, Ex. I ¶ 4). Mr. Rivera correctly claims that from June 1 through August 1, 2016, he was underpaid by **$256** (32 hours x (($24 - $16)).

Mr. Rivera also estimates that he worked a total of twenty-one days without compensation. (*Id.*). Based on his normal schedule of working fifty-six hours weekly, he calculates that he worked for a total of 168 hours without pay, 48 of which represent overtime

work. (*Id.*). Using his contracted rate of pay, Mr. Rivera miscalculates his unpaid wages for this time to be $5,376. (*Id.*). Even if Mr. Rivera were entitled to recover his contacted based rate and overtime rate for this time, that amount would still only total $3,072 ((120 hours regular work x $16) + (48 hours overtime x $24)). Nevertheless, because Mr. Rivera received no payment for these three weeks, he is entitled only to receive the FLSA minimum wage and corresponding overtime rate. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. These amounts are $870 in regular wages ($7.25 x 120 hours) and $522 in overtime wages (($7.25 x 1.5) x 48)), totaling **$1,392.**

Accordingly, the total unpaid minimum and overtime wages due to Mr. Rivera are **$1,648** ($256 + $1,392).

### Juan Rodas

Juan Rodas ("Mr. Rodas") was hired to work for defendants at a rate of $18 per hour and was employed by defendants from February 29 through August 9, 2016. (Docket no. 43, Ex. K). For nineteen weeks from February 29 through July 15, 2016, Mr. Rodas worked fifty-six hours each week, but was only compensated for these hours at his regularly hourly rate. (Docket no. 43, Ex. K ¶ 4). Mr. Rodas thus worked 304 hours of overtime, for which he was only compensated at his base rate. Accordingly, from February 29 through July 15, 2016, Mr. Rodas was underpaid his overtime wages in the amount of **$2,736** (($27 - $18) x 304 hours).

From July 15 through August 9, 2016, Mr. Rodas alleges that he worked for three weeks without pay. He also alleges that during this time, he worked one 10-hour day without pay at a worksite not associated with CCE. During these three weeks, Mr. Rodas estimates that was not compensated for 178 hours of work, 48 of these hours being overtime. (*Id.*). Although Mr. Rodas seeks an award of his unpaid compensation calculated by his contractual amount with

defendants, because Mr. Rodas received no payment for these three weeks, he is entitled only to receive the FLSA minimum wage and corresponding overtime rate. *See* 29 U.S.C. § 206(a)(1)(C); 29 C.F.R. § 778.109. These amounts are $942.50 in regular wages ($7.25 x 130) and $522 in overtime wages (($7.25 x 1.5) x 48)), for a total of **$1,464.50**.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Rodas are **$4,200.50** ($2,736 + $1,464.50).

**Manuel Rodriguez**

Manuel Rodriguez ("Mr. Rodriguez") estimates that he began working for the defendants on March 5, 2016 and worked through July 5, 2016. (Docket no. 43, Ex. M ¶ 2). When Mr. Rodriguez was hired, he was told that he would be paid at a rate of $18 per hour. (Docket no. 43, Ex. M ¶ 4). Between March 5 and June 25, 2016, Mr. Rodriguez estimates that he worked fifty-six hours per week, but was compensated at regular hourly rate instead of the overtime rate for these hours overtime hours. (*Id.*). Mr. Rodriguez correctly calculates that his unpaid overtime wages for March 5 to June 25, 2016 total **$2,304** ((16 hours x 16 weeks x ($27 - $18)) (*Id.*).

Between June 25 to July 5, 2016, Mr. Rodriguez claims that he was not paid at all for sixty-eight hours of regular work and sixteen hours of overtime work. (*Id.*). During this time, Mr. Rodriguez thus claims that he is entitled to $1,656 for these hours ((68 hours regular work x $18) + (16 hours overtime x $27)). (*Id.*). Mr. Rodriguez acknowledges that defendants subsequently made one payment of $600, so he claims that he is owed $3,360 for this time. (*Id*). However, because Mr. Rodriguez received no payments during this time, he is entitled only to the FLSA minimum wage and corresponding overtime rate. *See* 29 U.S.C. § 206(a)(1)(C); 29

C.F.R. § 778.109. Mr. Rodriguez is thus entitled to $493 as unpaid regular wages ($7.25 x 68 hours) and $174 as unpaid overtime wages (($7.25 x 1.5) x 16)), totaling **$667**.

Accordingly, the total unpaid minimum and overtime wages due to Mr. Rodriguez are **$2,371** ($2,304 + $667 - $600).

In sum, the total amount of unpaid minimum wages due to the plaintiffs is **$39,096.25**. Plaintiffs, however, only seek an award of liquidated damages and concede that they have received compensatory damages through their settlement agreement with CCE. Accordingly, the undersigned does not recommend an award of any further compensatory damages.

**Liquidated Damages**

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid wages. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). However, an employer can avoid the imposition of liquidated damages upon a showing of good faith. In this case, the employers have failed to appear and present any defense to plaintiffs' claim of a willful violation of the FLSA. (Compl. ¶ 44). Accordingly, an award of liquidated damages equal to the amount of unpaid wages is appropriate.

Plaintiffs seek liquidated damages in the amount of $44,749.74. (Docket no. 43 at 9). However, as explained above, this figure relies upon plaintiffs' miscalculations primarily for weeks in which they were not paid. Accordingly, the undersigned recommends that a default judgment be entered in favor of plaintiffs against defendants in the amount of **$39,096.25** in liquidated damages owed under the FLSA.

<u>Conclusion</u>

For these reasons, the undersigned recommends that a default judgment be entered in favor of plaintiffs Manuel Rodriguez, Juan Rodas, Juan Flores Lopez, Jose Rivera, Pedro

Orellana, Jose Benitez, Jaime Alarcon, William Orellana, Vladimir Condori, Kenny Barriantos, Indira Barriantos, Hugo Bermudez, Sandra Bonilla, Cesar Duran, Hermes Marulanda, Ruth Monje, Marcos Flores, and Bernardo Martinez against defendants Capital Commercial Solutions, LLC, Ixel Morales, and Keren Torres in the total amount of **$39,096.25**. This award should be divided as follows: $1,328 to Jaime Alarcon; $3,206.25 to Indira Barriantos; $1,306 to Kenny Barriantos; $1,305 to Jose Benitez; $1,102.50 to Hugo Bermudez; $2,606.75 to Sandra Bonilla; $3,576.75 to Vladimir Condori; $3,098.75 to Cesar Flores Duran; $870 to Marcos Flores; $2,117 to Juan Flores Lopez; $870 to Bernardo Martinez; $2,105.50 to Hermes Marulanda; $3,916.75 to Ruth Monje; $1,761.50 to Pedro Orellana; $1,706 to William Orellana; $1,648 to Jose Rivera; $4,200.50 to Juan Rodas; and $2,371 to Manuel Rodriguez.

### Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to defendants Ixel Morales, Keren Torres, and Capital Commercial Solutions, LLC, R/A Ixel R. Morales, 6300 Lincolnia Road, Alexandria, Virginia 22312 the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 11th day of August, 2017.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

30