**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| MANUEL RODRIGUEZ *et al.*,<br><br>*Plaintiffs*<br><br>    v.<br><br>CAPITAL COMMERCIAL SOLUTIONS, LLC<br>*et al.*,<br><br>*Defendants* | Case No.: 1:17-cv-112-TSE-JFA |

**OBJECTION TO PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

Pursuant to Civil Rule 72, Plaintiffs Manuel Rodriguez, José Rivera, Pedro Orellana, William Orellana, Ruth Monje, Hugo Bermudez, Cesar Flores Duran, and Hermes Marandula (the "Objecting Plaintiffs") hereby object to Magistrate Judge Anderson's proposed findings of fact and recommendations (ECF No. 48), filed on August 11 in response to Plaintiffs' motion for default judgment (ECF No. 43).[1] For the reasons described below, Judge Anderson incorrectly determined the Objecting Plaintiffs' "regular rates" of pay in calculating their overtime damages under the Fair Labor Standards Act.

---

[1] Plaintiffs Jaime Alarcon Aguilar, Indira Barriantos, Kenny Barriantos, José Benitez, Sandra Bonilla, Vladimir Condori, Marcos Flores, Juan Flores Lopez, Bernardo Martinez, and Juan Rodas do not join this objection and request that judgment be promptly entered in their favor in the amount recommended by the magistrate judge.

1

**Introduction and Background**

Under Section 7(a) of the Fair Labor Standards Act, a worker who works over 40 hours in any workweek is entitled to an hourly overtime premium for the hours they worked above 40. 29 U.S.C. § 207(a)(1). The overtime rate must be at least one-and-a-half times "the regular rate at which [the worker] is employed." *Id.* The FLSA does not define "regular rate" or say how it is to be determined.

The Objecting Plaintiffs are eight construction workers hired by Defendants to work on a luxury apartment-building project in Arlington. (Magistrate's Proposed Findings of Fact and Recommendations ("R&R"), ECF No. 48 at 4). Defendants (their employers)[2] hired these Plaintiffs at hourly pay rates ranging from $16–$20 per hour. (*See id.* at 12–28.). Initially, Defendants paid the Objecting Plaintiffs in accordance with these hourly rates—albeit with no overtime premium for their overtime hours—for periods ranging from several weeks to several months. (*See id.*; *see also* Mot. for Default J., ECF No. 43 at 8 and exhibits cited therein; Am. Compl., ECF No. 7 at ¶¶ 53-54, 58-59, 63-64, 69-70, 73-74, 80-81, 85-86, 90-91, 108-109, 119-120, 130-131, 135-137, 147-148, 152-153.). But after a time, the Defendants stopped paying the Objecting Plaintiffs any wages at all for their work. (*See* R&R at 12–29). The Objecting Plaintiffs then sued Defendants for their unpaid wages, including a claim under the FLSA for their unpaid overtime. (Am. Compl., ECF No. 7 at 29–30). The Plaintiffs argued that the "regular rate" for all the weeks that they worked was the hourly rate at which they had initially been hired and paid under the work contract. (*See* Am. Compl., ECF No. 7 at ¶¶ 52-155.)

---

[2] Plaintiffs reached a settlement with Defendant CCE Specialties, LLC (the general contractor on the Arlington construction project) and have dismissed CCE from the case. *See* ECF Nos. 42 and 46.

In his proposed Findings of Fact and Recommendations (referred to here as the "Report and Recommendation" or "R&R"), Judge Anderson agreed that Defendants violated the workers' overtime rights under the FLSA. R&R, ECF No. 48 at 9–12. In determining the Objecting Plaintiffs' FLSA overtime damages, however, the Report and Recommendation in some weeks incorrectly determined the "regular rate"—the hourly base rate that is multiplied by 1.5 in order to calculate a worker's time-and-a-half overtime premium.

## Basis for Objection

The error occurred as follows: although the Objecting Plaintiffs were hired at fixed hourly pay rates—and were in fact paid according to those pay rates for weeks or months at a time—Judge Anderson disregarded this rate in determining how much overtime pay they were entitled to receive in a given workweek. *See id.* at 13. Rather, Judge Anderson held that each Plaintiff's "regular rate" should be determined on a workweek-by-workweek basis, without any reference to the work contract or to the rate at which each Plaintiff had previously been paid in normal workweeks. *See id.* Instead, the R&R found that the Objecting Plaintiffs' regular rate was determined solely by dividing each Plaintiff's gross pay for each workweek by the number of hours worked in that workweek. *See id.* Accordingly, in weeks where the Defendants failed to pay any wages, the R&R found that the Plaintiff's regular rate for that week was *zero*, and that he or she was entitled to only $10.875 per overtime hour—one-and-a-half times the federal minimum wage of $7.25 per hour—without regard to the higher rate that the Plaintiff was entitled to be paid under the work contract. (*See* R&R at 13, *id.* at n.7.) This formula was used in the R&R to calculate the unpaid overtime wages of all eight Objecting Plaintiffs.[3]

---

[3] *See* R&R at 16–17 (Hugo Bermudez); 20–21 (Cesar Flores Duran); 22–23 (Hermes Marandula); 23–24 (Ruth Monje); 24–25 (Pedro Orellana); 25–26 (William Orellana); 26–27 (José Rivera); and 28–29 (Manuel Rodriguez).

In reaching his conclusion, Judge Anderson relied exclusively on a U.S. Department of Labor ("DOL") overtime regulation stating that a worker's regular hourly rate "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." R&R at 13 (quoting 29 C.F.R. § 778.109). The R&R provided no further explanation or analysis.

As explained below, Judge Anderson did not apply the correct regulation: the DOL provides a specific regulation regarding hourly-rate employees, which states that if an employee is paid by the hour, then their normal hourly rate is the "regular rate" for FLSA purposes. Judge Anderson's interpretation also contradicts the FLSA's remedial purpose. For those reasons, the Objecting Plaintiffs respectfully ask the Court to review this issue *de novo* and recalculate their overtime wages for all workweeks using the proper regular rate: the hourly rate at which they were hired, and at which they were actually paid before the employers abruptly stopped paying them altogether.

## ARGUMENT

**A. The DOL regulations make it clear that if an employee is paid by the hour, that hourly rate is the "regular rate."**

In reaching his erroneous conclusion, Judge Anderson relied on 29 C.F.R. § 778.109—one in a series of U.S. Department of Labor regulations meant to help determine a worker's "regular rate" for calculating overtime owed under the FLSA. But far from being the final word on the matter, that regulation is a general starting point for determining the regular rate, particularly for workers (unlike the Objecting Plaintiffs) whose work contracts compensate them on something than an hourly basis. As the regulation states:

> The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but *in such case* the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek…[T]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid. *The following sections give some examples of the proper method of determining the regular rate of pay in particular instances*:

29 C.F.R. § 778.109 (emphasis added).

Among the examples that follow is 29 C.F.R. § 778.110, which applies specifically to hourly-rate employees and is the correct regulation under which Objecting Plaintiffs' "regular rate" should be calculated. This regulation provides that:

> *If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the "regular rate."* For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week. Thus a $12 hourly rate will bring, for an employee who works 46 hours, a total weekly wage of $588 (46 hours at $12 plus 6 at $6). In other words, the employee is entitled to be paid an amount equal to $12 an hour for 40 hours and $18 an hour for the 6 hours of overtime, or a total of $588.

29 C.F.R. § 778.110 (emphasis added).

Therefore, where an employee is employed solely at a single hourly rate, that hourly rate is the "regular rate" for purposes of FLSA overtime.

This is not to say that an hourly worker's regular rate can be determined solely by looking at the parties' work contract. Both DOL and the Supreme Court have made it clear that

even where a worker is hired at a purported hourly rate, that does not end the inquiry if the worker is *never actually paid* at that rate. As 29 C.F.R. § 778.108 states:

> The "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract (*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446). The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed—an "actual fact" (*Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419).

29 C.F.R. § 778.108.

The regulation's reference to the "normal, nonovertime week" confirms that Judge Anderson's approach—in which an hourly employee's "regular rate" is determined anew each and every week—was incorrect: because in order to determine the rate of pay for a "normal" week, one must necessarily look beyond the week at issue and see how the employee is "normally" paid.

Here, a review of the compensation that the Objecting Plaintiffs received during their initial workweeks confirms that their contracted-for hourly rates should be treated as their "regular rates" for FLSA overtime purposes: because during the Objecting Plaintiffs' "normal, nonovertime workweeks," these Plaintiffs *were in fact actually paid* pursuant to the hourly rates that they had been promised. Furthermore, this approach is consisted with the DOL's interpretation of the applicable regulations. The DOL's Field Operations Handbook provides that "[t]he regular rate for purposes of back wage computations for overtime weeks in which an employee subject to the overtime provisions of the acts receive no pay or only part of his/her pay shall be determined on the basis of the established practice, agreement, or understanding." Wage & Hour Div., U.S. Dep't of Labor, Field Operations Handbook § 32b00a (2016), https://www.dol.gov/whd/FOH/FOH_Ch32.pdf.

When the courts choose to ignore the contract rate in determining an employee's "regular rate" under the FLSA, it is generally because the employer is trying to play games with the contract in order to avoid its FLSA obligations, or because the contract rate is never actually paid. For example, in *Youngerman-Reynolds*, 325 U.S. 419, 425 (1945) and *Bay Ridge Operating Co.*, 334 U.S. 446, 451 (1948), the Supreme Court cases cited in 29 C.F.R. § 778.108, the employers tried to use the parties' work contract as a defense to overtime liability. In both cases, the Supreme Court ignored the contracts entirely, because the employer had attempted to manipulate what type of work would be treated as "regular" and "overtime" through the use of artificial contractual labels."[4] That is actually the opposite of the situation here, because in this case "the employer is not hiding behind contractual language, but allegedly disregarding it." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 359 (E.D.N.Y. 2007). Neither the DOL nor the Supreme Court has suggested that the FLSA's "regular rate" language should *reward* an employer who violates an hourly work contract by failing to pay any wages for work performed under it. But by setting the worker's regular rate to zero when an employer fails to pay, the Report and Recommendation does just that.

For these reasons, the Court should correct the Report and Recommendation's mistaken interpretation of the FLSA and find that the Objecting Plaintiffs' "regular rate" of pay for all weeks worked was the hourly rate set by the work contract—i.e., the rate that was actually paid to them in their "normal" workweeks before the employers simply stopped paying them altogether.

---

[4] The work contract in *Youngerman-Reynolds* purported to set workers' "regular rate" at the FLSA hourly minimum, but in practice they were paid according to a piece-rate system that made their actual hourly wage significantly higher. 325 U.S. 419, 425 (1945). The work contract in *Bay Ridge Operating Co.* labeled certain hours as "overtime" but did not actually provide for a premium for hours worked beyond 40 in a week. 334 U.S. 446, 451 (1948).

**B. Judge Anderson's approach conflicts with the Congressional policies underlying the FLSA overtime rule.**

The Fourth Circuit has held that, because the FLSA is "remedial and humanitarian in purpose," it should be broadly interpreted to effectuate its goals. *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). Congress created the FLSA overtime pay requirement for two reasons: "(1) to spread employment by placing financial pressure on the employer…and (2) to compensate employees for the burden of a workweek in excess of the hours fixed in the Act." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944).

Judge Anderson's interpretation of the FLSA conflicts with both of these goals. Rather than "place financial pressure" on the employer, Judge Anderson's approach rewards employers who fail to pay workers any wages at all. For example, even where an employer has promised to pay a worker $50 per hour, a breaching employer's maximum overtime liability will be $10.875 per hour—the bare statutory minimum. This represents a windfall to employers who fail to fulfill their contract obligations. Rather than adequately compensating employees for labor performed in reliance on the employer's promise to pay in accordance with the work contract, Judge Anderson's approach penalizes these workers by denying them the overtime wages they would receive if the employer kept up its end of the bargain. By encouraging employers not to compensate workers at the rate they are entitled to, this approach cannot be squared with the remedial purposes of the FLSA. Judge Anderson's method for calculating the regular rate should be rejected.


# CONCLUSION

For the foregoing reasons, the Objecting Plaintiffs ask that this Court revise Judge Anderson's recommended overtime award and calculate all of their overtime hours at the proper regular rate: the normal hourly rate at which each of them was paid in the weeks prior to the employers' breach.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                                    Dated: August 25, 2017
Nicholas Cooper Marritz (VSB No. 89795)
nicholas@justice4all.org
Simon Sandoval-Moshenberg (VSB No. 77110)
simon@justice4all.org
Nady Peralta (VSB No. 91630)
nady@justice4all.org
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, Virginia 22041
Phone: (703) 720-5607
Fax: (703) 778-3454

Christine T. Dinan (VSB No. 84556)
Christine_dinan@washlaw.org
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 DuPont Cir., NW Suite 400
Washington, D.C. 20036
Phone: (202) 319-1000
Fax: (202) 319-1010

Kevin H. Metz (VSB No. 89861)
Kevin.metz@lw.com
Brian A. Lichter (*pro hac vice*)
Brian.lichter@lw.com
Norman Anderson (*pro hac vice*)
Norman.anderson@lw.com
Latham & Watkins LLP
555 Eleventh St., NW Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 25, 2017, I served the foregoing Objection to Proposed Findings of Fact and Recommendations on the following unpresented defendants, by U.S. Mail, at their last known address, as follows:

    Capital Commercial Solutions, LLC
    Ixel R. Morales
    Keren Torres
    6300 Lincolnia Road
    Alexandria, VA 22312

By: ____//s//_____
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike #520
Falls Church, Virginia 220401
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org